IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIANE BEHNKEN, et al., on behalf of themselves and all those similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:13-CV-2667-D |
| LUMINANT MINING COMPANY, LLC, | § § § § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs Diane Behnken, Walter R. Brown, Joe Collette, Bill Doss, Jr., Daniel

Griffin, and Willard Simpson, on behalf of themselves and all others similarly situated, bring

this putative collective action under 29 U.S.C. § 216(b), a provision of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid overtime pay from

defendant Luminant Mining Co., LLC ("Luminant").  Plaintiffs move for conditional

certification and court-facilitated notice to potential class members, and  limited discovery.

For the reasons that follow, the court grants the motion for conditional certification and

court-facilitated notice (subject to sustaining certain of Luminant's objections to the proposed

notice), and grants in part and denies in part the motion for limited discovery.

I

Plaintiffs allege that they are non-exempt hourly employees of Luminant who work

at the Three Oaks Mine near Rockdale, Texas.[1]  Luminant classifies employees according to their experience and skill set: Mine Specialist ("Spec") I is the highest-ranking classification; Spec II is the second-highest ranking classification; Spec III is the next-highest ranking classification; and Mobile Equipment Specialist ("MES") is the lowest-ranking classification.  Within each classification, mine employees work in various positions, sometimes changing duties from shift to shift. Representative positions within each classification include, *inter alia*, dragline operator, loader operator, bulldozer operator, and hauler operator.

According to plaintiffs, Luminant requires all Spec I, Spec II, Spec III, and MES employees—except for mechanics and electricians—to work during their assigned meal break times.  Plaintiffs allege that they were paid for 12 hours of time but were effectively required to work a 12.5-hour shift because Luminant did not provide a *bona fide* meal break.[2]  They maintain that, as a result of this practice, they worked from approximately March 2012 to March 2013 in excess of 40 hours per work week but were not paid any overtime, in violation of 29 U.S.C. § 207(a)(1).  Plaintiffs move the court to conditionally certify the

---

[1]Luminant states that the Three Oaks Mine is located in Elgin, Texas.  Because plaintiffs' proposed class definition uses the designation "near Rockdale, Texas," the court will use this description as well.

[2]Employers are not required to compensate employees for *bona fide* meal times.  *See* 29 C.F.R. § 785.19 (2013).  To qualify as a *bona fide* meal time, the employee must be completely relieved from duty.  *See id.*  Plaintiffs allege that they were required to stay on their equipment in the mining area, to maintain radio contact with other coworkers and supervisors at all times, and to monitor the mine pit walls during meal breaks.

collective action and approve court-facilitated notice to a class defined as follows: "All current and former non-management mining employees other than electricians and mechanics at the Three Oaks mining facility near Rockdale, Texas operated by [Luminant] who were employed between March 1, 2012 and March 15, 2013." Ps. Mot. 2.  Luminant opposes the motion.

## II

Section 216(b) of the FLSA authorizes a plaintiff to bring a collective action on behalf of similarly-situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court.  29 U.S.C. § 216(b).  When a plaintiff seeks to bring a collective action, a district court can in its discretion facilitate notice to potential plaintiffs of their right to opt-in to the suit.  *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (involving claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, which incorporates relevant provisions of the FLSA); *Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) (Lynn, J.) (applying *Hoffmann-La Roche* to FLSA context).  Although the Fifth Circuit has declined to adopt a specific test to determine when courts should exercise their discretion to facilitate notice or certify a collective action, this court has adopted the prevailing two-stage test.  *See Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004) (Fitzwater, J.) (adopting prevailing standard); *see also Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) (noting that collective actions are "typically" analyzed this way); *Mooney v. Aramco Servs. Co.*, 54 F.3d

- 3 -

1207, 1216 (5th Cir. 1995) (declining to adopt specific standard, but finding no abuse of discretion where district court applied prevailing standard), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003); *Valcho v. Dall. Cnty. Hosp. Dist.*, 574 F.Supp.2d 618, 621-22 (N.D. Tex. 2008) (Fitzwater, C.J.) (reaffirming decision in *Aguilar*).

Under this test, the court first determines whether plaintiffs have provided sufficient evidence of similarly-situated potential plaintiffs to warrant court-facilitated notice. *Aguilar*, 2004 WL 2293842, at *1. If they have, the court "conditionally certifies" the class and facilitates notice to the potential plaintiffs. *Id.* Second, the court reexamines the class after notice, time for opting-in, and discovery have taken place, typically in response to defendant's motion. *Id.* If the court finds that the class is no longer made up of similarly-situated persons, it decertifies the class. *Id.* "To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar." *Id.* (internal quotation marks omitted).

The court is generally more "lenient" with regard to substantial similarity during the "notice" stage of the analysis, *id.*, but "notice is by no means mandatory." *Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586, at *2 (N.D. Tex. May 15, 2006) (Solis, J.) (citing *Hall v. Burk*, 2002 WL 413901, at *2 (N.D. Tex. Mar. 11, 2002) (Sanders, J.)). "[T]he relevant inquiry in each particular case is whether it would be appropriate to exercise [the

court's] discretion" to facilitate notice.[3]  *Id.*  A primary reason for exercising this discretion is to ensure that the joining of other parties occurs in an "orderly, sensible, . . . efficient and proper way."  *See Hoffmann-La Roche*, 493 U.S. at 170-71.  The use of court-facilitated notice can ensure that information is timely, accurate, and informative, and it can also guard against abuse by misleading communications.  *Id.* at 171-72.  The parties and the court can benefit from settling disputes about the content of the notice before it is distributed, because it may avoid the need to cancel consents obtained in an improper manner.  *Id.* at 172.

But before granting court-facilitated notice, the court should satisfy itself that there are other similarly-situated employees of Luminant who would desire to opt-in to the lawsuit. *See Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *see also H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) ("Courts . . . have considered factors such as . . . whether affidavits of potential plaintiffs were submitted . . . [and have required] a factual showing suggesting that [the potential plaintiffs] were similarly situated." (citations omitted)).  This is because "courts . . . have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation."  *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (internal quotation marks omitted).  The court must ensure that "an employer [is] not . . . unduly burdened by a frivolous fishing expedition[.]"  *Id.*

---

[3]A court's refusal to facilitate notice does not of itself prevent a plaintiff from using independent efforts to identify potential plaintiffs of the lawsuit.  *See Hoffmann-La Roche*, 493 U.S. at 170-71.

For these reasons, the court has less cause for leniency during the "notice" phase of the analysis where a plaintiff has already conducted discovery on the certification issue. *See, e.g., Harris*, 2006 WL 1994586, at *3 ("[W]here the parties have had the opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent.") (collecting cases). One of the rationales for leniency "is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence. This rationale disappears, however, once plaintiffs have had an opportunity to conduct discovery." *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1276 (M.D. Ala. 2004) (citation omitted). Thus because the court does not intend that its powers be used for a "frivolous fishing expedition," *D'Anna*, 903 F. Supp. at 894, it will hesitate to facilitate notice where a plaintiff, having already conducted discovery, still cannot support the claim with evidence. *See Davis*, 303 F.Supp.2d at 1277 (stating that plaintiff must adduce evidence beyond her own testimony); *H&R Block*, 186 F.R.D. at 400 (same).

### III

The court first considers whether plaintiffs have produced sufficient evidence that there are similarly-situated plaintiffs. Luminant contends that plaintiffs cannot make this showing for three reasons: first, they cannot prove that they or the putative class were subject to a single policy, practice, or decision that violated the FLSA; second, their claims will require individualized assessments that would render the matter unsuitable for a collective action; and third, plaintiffs are not similarly situated because they are classified differently and have different job descriptions.

- 6 -

A

1

Luminant contends, first, that it had a lawful policy in place during the relevant period. It argues that the policy required its employees to report when they worked through lunch so that they could be paid for overtime, and that any failure to pay overtime during the relevant period was the fault of the employees for not reporting their time correctly. Plaintiffs respond that there is no evidence to support the existence of this reporting requirement, that employees in the putative class did not know they were entitled to a *bona fide* meal break, and that management did not tell employees in the putative class to report working lunches on their time sheets.

In support of its position, Luminant cites the 12-Hour Shift Agreement ("Shift Agreement") and the collective bargaining agreement ("CBA") between Luminant and IBEW Local 2078, which represents some of the employees in the putative class. According to Luminant, the lunch-time policy is established by the Shift Agreement, which incorporates the meals provisions of the CBA. The Shift Agreement provides, in pertinent part, that the workday will be as follows:

> Regular workday will consist of two 12-hour shifts. Day shift starts at 7:00 a.m. and ends at either 7:00 p.m. or 7:30 p.m. Night shift starts at 7:00 p.m. and ends at either 7:00 a.m. or 7:30 a.m. Shifts will be determined depending whether the employee is assigned to observe a 30-minute unpaid lunch period or eats on the run based on the business needs as determined by supervision.

D. App. 23. A different provision of the Shift Agreement states: "Meals: Reference current

Labor Agreement." *Id.* at 25 (underlining omitted). The CBA includes the following provision:

> Section 5 Meals: When an employee is assigned to work unexpected overtime connected to his/her regularly scheduled shift and the employee notifies his/her supervisor of the need for an appropriate meal, a good faith effort will be made to accommodate the employee needs. The supervisor retains the discretion to approve a meal based on the job assignment, working conditions and expected employee release time.

*Id.* at 21 (bold font omitted).

In addition to these written documents, Luminant cites other evidence to support its position. It cites the declaration of Curtis Lightle ("Lightle"), the Director of the Three Oaks Mine, in which he avers that "[t]he Company communicates to employees that they must fill out timesheets each week . . . . Management informed employees of this policy, and employees understood and utilized this policy when they worked through a lunch break." D. App. 3. It also cites the declaration of Jonathan Lewis ("Lewis"), the Human Resources Manager at the Three Oaks Mine, in which he avers:

> When Luminant implemented the 12.5-Hour Shift Period, I met with employees to explain how to complete their time sheets and that they had an option of making notations to their supervisors and payroll regarding any discrepancy in their work hours on the notes section of the time sheet . . . . If employees had an issue, they could talk to their supervisor or to any of us in HR or payroll . . . . Based on my role and observations during the 12.5-Hour Shift Period, I am confident that employees understood the pay policy and how to get paid when they worked through their lunch breaks.

D. App. 15. And it cites time sheets, some of which were allegedly filled out by named

- 8 -

plaintiffs in this case, that include a notation indicating that the employee worked through lunch. *See, e.g.,* D. App. 28. Luminant argues that this evidence conclusively establishes that plaintiffs understood and used Luminant's lawful policy regarding working lunches, and, as a result, they are unable to identify any policy, practice, or decision that serves as the basis for the alleged FLSA violations.

Plaintiffs respond that neither the Shift Agreement nor the CBA imposes a reporting requirement on the employees. They also argue that the declarations from Lightle and Lewis are vague and conclusory and do not negate plaintiffs' eight declarations to the contrary. Finally, plaintiffs maintain that the fact that some employees, including several named plaintiffs, noted on various time sheets that they worked through lunch does not prove that the employees knew they were entitled to a *bona fide* meal break or that management communicated to them that they were required to fill out their time sheets in a certain way to receive overtime compensation.

2

The question presented is whether plaintiffs have provided substantial *allegations* that potential class members were subject to a single decision, policy, or plan that violated the FLSA. The court holds that they have.[4]

_____

[4]The court is assuming *arguendo* that plaintiffs must provide a substantial allegation that the potential class members were subject to a common decision, policy, or plan. The court notes that other courts have suggested that an allegation of a common decision, policy, or plan may not be required under § 216(b). *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) ("Essentially we hold that the 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in [Fed. R. Civ. P.]

Luminant implicitly concedes in its response that the members of the putative class were subject to a common policy concerning meal breaks. Although Luminant disputes the *legality* of the policy (and what the policy required of its employees), it does not contest that the members of the putative class were subject to the *same* policy, as reflected in the Shift Agreement and the CBA.[5] Luminant effectively asks the court to analyze the underlying merits of plaintiffs' claim—by weighing conflicting evidence, resolving disputed issues of fact, and determining whether the policy was lawful. It is improper for the court to make such a determination at the notice stage. *See, e.g., Lee v. Metrocare Servs.*, ___ F.Supp.2d ____, 2013 WL 5863342, at *10 (N.D. Tex. Oct. 30, 2013) (O'Connor, J.); *Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856, 861 (S.D. Tex. 2012); *McKnight v. D. Hous., Inc.*, 756 F.Supp.2d 794, 802 (S.D. Tex. 2010). This is not a case where, after months of discovery,

---

20 (joinder) and Rule 42 (severance). We also hold that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)[.]").

[5]For example, Lightle avers in his declaration:

> From March 5, 2012 to March 7, 2013, Three Oaks changed to 12.5-hour shifts rather than 12 hour shifts . . . . By switching to the 12.5 hour shift, management intended that employees would take a half hour non-working, un-paid lunch midway through their shifts . . . . During the 12.5-Hour Shift Period, if an employee had to work through his or her lunch period, . . . the employee would alert his or her supervisor of that fact so that he/she would be paid for that half hour . . . . Management informed employees of *this policy*, and employees understood and utilized *this policy* when they worked through a lunch break.

D. App. 2-3 (emphasis added).

plaintiffs have failed to produce any evidence that they were subject to a single decision, policy, or plan.  *See, e.g., Valcho*, 574 F.Supp.2d at 622-23 (denying motion for conditional certification where plaintiff did not produce any evidentiary support beyond bare allegations contained in complaint and personal declaration after three months of discovery).  Nor is it a case where the evidence adduced by the employer conclusively establishes the existence of a lawful policy.  *See, e.g., Dudley v. Tex. Waste Sys., Inc.*, 2005 WL 1140605, at *2 (W.D. Tex. May 16, 2005) (denying motion for conditional certification where plaintiff did not present any evidence refuting defendant's written policy that employees were admonished to take lunch breaks or testimony that drivers were informed of their lunch period).  Here, neither the Shift Agreement nor the CBA explicitly imposes a reporting requirement on the employees, and plaintiffs have adduced evidence that undermines the statements made in the declarations by Lightle and Lewis.  Although Luminant has adduced evidence that supports its theory, it would be improper at the notice stage, and before plaintiffs have conducted significant discovery, for the court to engage in a merits determination that would require the court to weigh conflicting evidence and resolve these disputed fact issues.  At this stage, plaintiffs are merely required to provide substantial *allegations* that the potential class members were subject to a single decision, policy, or plan that violated the FLSA, which they have done.[6]

_____

[6]Numerous courts have emphasized that the factual support necessary at this stage is modest, and that the standard to be applied by the district court is quite lenient.  *See, e.g., Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011) (noting that courts do not require proof of an actual FLSA violation); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569

B

Luminant argues, second, that plaintiffs' claims will require individualized assessments that render the matter unsuitable for collective action.  It contends that plaintiffs' theory requires a number of individualized inquiries because each plaintiff will have to testify about whether she worked through lunch, understood the alleged reporting requirement discussed above, and made notations for working through lunch on her time sheet.  Plaintiffs respond that none of these alleged individualized assessments affects the decision to conditionally certify a class because they do not change the underlying dispute concerning whether members of the putative class were provided *bona fide* meal breaks and whether they were responsible for reporting working lunches on their time sheets.  Plaintiffs also maintain that, even if some named plaintiffs were paid for some of their working lunches, minor differences in the amounts payable to various class members are an insufficient reason to deny conditional certification.

The court concludes that the alleged need for individualized assessments is not a sufficient reason to deny conditional certification under the facts and circumstances of this case.  Luminant relies primarily on two cases, both of which are distinguishable.

In *Dudley*, although the court noted that "[a]ny analysis of lunch breaks will result in this court and any jury hearing individual testimony regarding whether [plaintiffs] regularly

---

F.Supp.2d 334, 336 (W.D.N.Y. 2008) (noting that evidentiary standard is "lenient"); *Doucoure v. Matlyn Food, Inc.*, 554 F.Supp.2d 369, 372 (E.D.N.Y. 2008) (noting that plaintiffs only need to make a "modest factual showing").

took lunch breaks, or only occasionally," that was not the sole, or even primary, basis for the

court's conclusion. *Dudley*, 2005 WL 1140605, at *2. The court explained:

> Plaintiff presents no evidence refuting Defendant's written
> policy that employees were admonished to take their lunch
> breaks. Further, Plaintiff presents no evidence refuting the
> General Manager's testimony that drivers are informed that if
> they work through their lunch period, they are to advise
> management of that fact so they can be compensated for that
> working time.
>
> Given that the evidence presented by Plaintiff fails to
> sufficiently demonstrate the existence of a "similarly situated"
> class of employees and Plaintiff's complaint and affidavits in
> support thereof contain unsupported assertions of improper
> lunch break adjustments, the Court declines to certify a
> collective action on the issue of improper lunch break
> adjustments.

*Id.* In the present case, plaintiffs have produced more than unsupported assertions, and

Luminant has failed to produce evidence of a written policy that conclusively establishes the

legality of its practice. Although at some point there may be some need for individualized

testimony, this possibility does not negate the showing that plaintiffs have made at this stage.

Saleen v. Waste Management, Inc., 649 F.Supp.2d 937 (D. Minn. 2009), is also

distinguishable.[7] In *Saleen* the plaintiffs sought to certify a significantly broader class, which

raised special concerns for the court. *See id.* at 942 (noting that plaintiffs sought to certify

class of "tens of thousands of employees (some unionized, some not) who worked for untold

_____

[7]Plaintiffs rely on the magistrate judge's report and recommendation. *See Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, at *1 (D. Minn. June 15, 2009). The plaintiffs objected to the magistrate's recommendation, and the district court affirmed and adopted the magistrate judge's recommendation. This court discusses the district court's opinion.

numbers of different managers at hundreds of different locations throughout the United States" ).  The magistrate judge recommended that the plaintiffs' motion for conditional certification be denied, and the district judge agreed.  *Id.* at 943.  The district judge applied the deferential standard of review provided by 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), and he concluded that because plaintiffs had offered "no direct evidence of an unlawful policy that applies to all of these people," they were effectively asking the court to infer a company-wide policy of discrimination from a "tiny fraction" of the company's employees.  *Id.* at 942.  The district judge found "the question of conditional certification to be a close one," but he affirmed the magistrate judge because he was not left with the definite and firm conviction that the magistrate judge's decision was erroneous.  *Id.* at 943.  *Saleen* is thus distinguishable in two respects: it is procedurally distinguishable because the district judge did not analyze the issue *de novo*, and it is factually distinguishable because the plaintiffs were attempting to certify a nationwide class based on a company-wide policy, and the defendant's evidence indicated that, contrary to the plaintiffs' allegations, it had paid for time worked during meal breaks "on hundreds of thousands of occasions." *Id.* at 942.  Here, by contrast, plaintiffs are seeking to certify a much narrower class of employees who worked for the same set of managers at the same mining facility, and the evidence Luminant has adduced is, at least at this preliminary stage, less conclusive.[8]

---

[8]Luminant also cites *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567 (E.D. La. 2008), but that case is distinguishable, too.  In *Johnson* the court decertified a class at the second stage of the two-step certification approach—after a bench trial and under different standards.  *See id.* at 569-71.  Moreover, there was substantial evidence that the job duties

Although the need for individual testimony may become apparent at a later stage of this lawsuit, it does not negate that plaintiffs have presented a "factual nexus" that binds the named plaintiffs and the potential class members. *See, e.g., Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (Robinson, J.) (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)).  That factual nexus is the alleged practice of Luminant's failing to pay overtime to workers who worked through meal breaks during the period between March 2012 and March 2013.[9]  Such a showing is sufficient to support conditional certification.

## C

Luminant maintains, third, that plaintiffs are not similarly situated because they are classified in different ways and have different job responsibilities.  It points out that the putative class includes members with disparate classifications (e.g., Spec I, Spec II, Spec III, and MES) and different job duties (e.g., dragline operator, loader operator, bulldozer operator, and hauler operator).  Plaintiffs acknowledge that members of the putative class are classified differently and have varying job descriptions, but they argue that these differences are not materially different with respect to their claim.  According to plaintiffs, members of

_____

of the plaintiffs differed in materially relevant ways, *see id.* at 579-86, and the dissimilarity of the plaintiffs' job duties prevented the defendant from asserting its statutory exemption defense collectively, *see id.* at 586-87.

[9]As plaintiffs point out, if it turns out that some members of the putative class were paid overtime for some of the days in question, it would be relatively straightforward to compute the necessary offset amounts.

the putative class are similarly situated despite these differences because they are all non-management mining employees of Luminant, each has been paid on an hourly basis, each is classified as non-exempt by Luminant, each was employed at the Three Oaks Mine, and each was generally required to work through meal breaks during the period between March 2012 and March 2013.

The court concludes that the different job classifications and responsibilities of members of the putative class are not materially relevant differences under the first stage of the two-step certification process. Luminant relies on several cases in which courts denied motions for conditional certification because the differences in job duties were materially relevant to the plaintiffs' allegations. *See, e.g., Bodle v. TXL Mortg. Corp.*, 2012 WL 5828616, at *10 (S.D. Tex. Oct. 2, 2012) (plaintiffs' theory predicated on different compensation structures), *rec. adopted by* 2012 WL 5828593 (S.D. Tex. Nov. 14, 2012); *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at *5-8 (S.D. Tex. Jan. 24, 2007) (plaintiffs' theory predicated on different sales quotas); *Harris*, 2006 WL 1994586, at *3-4 (plaintiffs' theory implicated different defenses depending on whether plaintiff was exempt or non-exempt). But that reliance is misplaced. In the instant case, the differences among employees in the putative class—job classifications, descriptions, and duties—are not materially relevant to plaintiffs' allegations.[10] Plaintiffs allege that these employees are similarly situated because their employment was governed by the same Shift Agreement,

---

[10]Plaintiffs' proposed class definition expressly excludes electricians and mechanics.

they were all hourly non-exempt employees, they all worked in the same mining facility, and each one is entitled to recover for unpaid overtime essentially because of Luminant's meal-time practice—a practice that applied to all of them. Because it appears from the record developed thus far that the employees' job classifications, descriptions, or duties do not affect any of the facts that are material to plaintiffs' claim, these differences are not sufficient to defeat conditional certification. *See Aguilar*, 2004 WL 2293842, at *4 ("Thus under plaintiffs' theory of the case, the fact that foremen and laborers had somewhat different duties and rates of pay is immaterial"); *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *3 (E.D. La. Apr. 16, 1992) ("But what matters is that the fundamental allegation—that according to company policy the time spent in job related meetings and training was uncompensated—is common to all the [FLSA] plaintiffs and dominates each of their claims."). The court therefore concludes that plaintiffs have made a sufficient showing that they are similarly situated.

IV

The court next considers whether plaintiffs have produced sufficient evidence that the similarly-situated plaintiffs would desire to opt-in. "[B]efore granting court-facilitated notice, the court should satisfy itself that there are other similarly situated employees . . . who would desire to opt-in to this lawsuit." *Valcho*, 574 F.Supp.2d at 622 (citing cases).

Plaintiffs allege that more than 50 employees[11] have already opted-in and that other

---

[11]In their motion, plaintiffs state that 58 employees have opted-in, but in their reply brief, they state that 52 individuals have already filed opt-in forms with the court. *Compare*

employees may wish to opt-in once they receive notice.  Luminant concedes that more than 50 employees have expressed a desire to opt-in, but it argues that this fact cuts against court-facilitated notice.  According to Luminant, months before plaintiffs filed their complaint, representatives of IBEW Local 2078, which represents some of the employees in the putative class, asked employees to come by the union hall to sign up for the lawsuit, thereby obviating the need for additional notice.  Luminant contends that court-facilitated notice—when the union has already notified members of the putative class of the lawsuit—will create the appearance of judicial endorsement of the merits of the lawsuit.  The court disagrees.

Luminant does not cite any authority for the proposition that a non-court-approved form of notice renders court-approved notice a threat to judicial neutrality.  In the two cases that Luminant cites, the court denied plaintiffs' requests to send reminder postcards *after* the initial court-approved notice was given.  *See, e.g., In re Wells Fargo Wage & Hour Empl. Practices Litig. (No. III)*, 2013 WL 2180014, at *3 (S.D. Tex. May 17, 2013) (denying plaintiffs' request for reminder notices and recorded messages, but granting plaintiffs' request for Internet posting).  Here, there has been no prior court-approved notice, so the concern with maintaining judicial neutrality is inapposite.  And Luminant cannot establish that *all* potential similarly-situated employees are already aware of the notice provided by the union representatives, so there may be employees who wish to opt-in who have not yet

---

Ps. Mot. 11, *with* Ps. Reply 5.  The court notes that more than 50 employees is a sufficient basis to infer that similarly-situated employees would desire to opt-in, regardless whether the actual number is 58 or 52.

been notified by any means.  Accordingly, the concern with stirring up unnecessary litigation likewise does not apply.

Because plaintiffs have adduced evidence that more than 50 employees of the putative class have already expressed a desire to opt-in and that more employees may wish to do so, the court concludes that similarly-situated employees may desire to opt-in to this suit.

V

The court therefore holds that plaintiffs have made substantial allegations of the existence of similarly-situated employees of the putative class who would desire to opt-in and have therefore met the requirements for conditional certification of the class.  The court conditionally certifies a class consisting of "[a]ll current and former non-management mining employees other than electricians and mechanics at the Three Oaks mining facility near Rockdale, Texas operated by [Luminant] who were employed between March 1, 2012 and March 15, 2013."

VI

The court now considers plaintiffs' proposed form of notice and consent to join form.

A

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170. Consequently, district courts must exercise their discretion regarding the form and content of the notice so as to ensure that the notice is accurate and that it includes information that

- 19 -

would be needed to make an informed decision about whether to join the lawsuit. *Cf. id.*; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011).

Luminant objects to plaintiffs' proposed notice form on the following grounds: (1) it does not mention that, if plaintiffs eventually receive an unfavorable judgment, opt-in plaintiffs may be required to bear the costs of the litigation; (2) it does not advise that potential opt-in plaintiffs may be required to give a deposition, respond to written discovery, or testify in court; (3) it does not advise that potential opt-in plaintiffs may not recover for lunches for which they were already paid; (4) it requires opt-in plaintiffs to mail the consent form to plaintiffs' counsel, not to the court; and (5) it does not list the identity of, or contact information for, Luminant's counsel. The court now considers each objection and plaintiffs' response.

B

1

Luminant first objects to the proposed notice on the basis that it does not mention that, if plaintiffs eventually receive an unfavorable judgment, opt-in plaintiffs may be required to bear the costs of the litigation. Plaintiffs respond that adding such language would unnecessarily deter potential opt-in plaintiffs from joining the lawsuit because the proposed language would not make clear that the costs would be dispersed among a large class and that attorney's fees would only be assessed against plaintiffs in the rare event that the case was determined to be frivolous.

The relevant statement in the proposed notice form states, "Plaintiffs' attorneys are

- 20 -

working on a contingency fee basis, which means that if there is no recovery, they receive no attorney's fee[s]."  Ps. App. 37 (bracketed material added).  This language does not apprise potential opt-in plaintiffs that they may be required to pay taxable court costs if the judgment is unfavorable to them.  Thus the proposed notice form is not completely accurate as to the potential liabilities for those who join the lawsuit, it omits information that would be necessary for someone to make an informed decision about whether to join the lawsuit, and the affirmative representation that plaintiffs' attorneys are working on a contingency fee basis and that no recovery means no attorney's fees could lead a potential opt-in plaintiff to believe that there would be no risk of incurring personal costs of any kind if the litigation were unsuccessful.  Accordingly, the court sustains Luminant's first objection to the extent that it directs that the proposed notice form be changed to read as follows: "Plaintiffs' attorneys are working on a contingency fee basis, which means that if there is no recovery, they receive no attorney's fees.  You may, however, be required to pay your proportional share of taxable court costs if the plaintiffs receive an unfavorable decision."  This modification addresses the inaccuracy in the proposed notice while simultaneously addressing plaintiffs' concern that individuals considering whether to opt-in might not be aware that such costs would be dispersed among members of the entire class.

2

Luminant's second objection is that the proposed notice form does not advise that potential opt-in plaintiffs may be required to give a deposition, respond to written discovery, or testify in court.  In response, plaintiffs agree to a partial modification so that the notice

- 21 -

form would state that individuals joining the lawsuit "may be required to be deposed or testify in court." Ps. Reply 10. They do not address Luminant's argument that the notice should also include language regarding the possibility that opt-in plaintiffs may be required to respond to written discovery.

Because plaintiffs do not give any reason why such language would be inappropriate, and courts routinely approve of such language, the court sustains Luminant's second objection. *See, e.g., Whitehorn*, 767 F.Supp.2d at 450 ("As to Defendants' request that prospective members be notified of the possibility that they will be required to participate in discovery and testify at trial, such text is routinely accepted, and Plaintiff is ordered to make this amendment."). The court directs that the notice form include language that "individuals joining the lawsuit may be required to give a deposition, respond to written discovery, and testify in court."

3

Luminant's third objection is that the proposed notice form does not advise that potential opt-in plaintiffs may not recover for lunches for which they were already paid. Plaintiffs oppose this objection on the ground that adding such language is unnecessary because the proposed notice form already makes clear that the lawsuit is for "unpaid" time.

The court agrees with plaintiffs that the proposed notice form clearly indicates that plaintiffs are seeking recovery of "unpaid overtime compensation." *E.g.,* Ps. App. 35. After considering the entire form, the court concludes that the proposed notice does not convey an inaccurate impression that potential opt-in plaintiffs will be able to recover for time

already paid.  Accordingly, the court overrules Luminant's third objection.

4

Luminant's fourth objection is that the proposed notice form requires opt-in plaintiffs to mail the consent form to plaintiffs' counsel, not to the court.  The court overrules this objection.

The only argument Luminant makes in support of this objection is that it will not be able to "timely determine opt-in status" if the consent forms are mailed to plaintiffs' counsel rather than to the court.  D. Resp. 29.  Luminant does not identify any reason why the consent forms cannot or would not be readily provided to it by plaintiffs' counsel.  The court directs plaintiffs' counsel to notify Luminant's counsel when notices are mailed to potential opt-in plaintiffs and to provide copies of consent forms to Luminant's counsel when they are received from persons opting into the lawsuit.

5

Luminant's fifth objection is that it does not list the identity of, or contact information for, Luminant's counsel.  Plaintiffs oppose this objection, contending that it would be inappropriate to identify and include contact information for Luminant's counsel as part of the notice.

Luminant does not identify any authority supporting its position, and the court is aware of none.  *See, e.g., Gambo v. Lucent Techs., Inc.*, 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005) (noting that "there is no basis in law or logic" for including defense counsel's name and contact information in notice).  Plaintiffs' counsel is typically responsible for

- 23 -

distributing notice in a collective action, and courts have expressed reservations on ethical grounds about post-certification communications between defendant's counsel and potential opt-in class members. *See, e.g., Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 847 (N.D. Cal. 2010) ("Including contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion."). Accordingly, Luminant's fifth objection is overruled.[12]

## VII

Plaintiffs request limited discovery to ensure timely notice.  They ask that the court order Luminant to produce either a Microsoft Word or Microsoft Excel data file containing the names, last known addresses, and telephone numbers of current and former non-management mining employees (except electricians and mechanics) at the Three Oaks Mine who were employed between March 1, 2012 and March 15, 2013.  They contend that this information is necessary to allow them to confirm the whereabouts of potential class members and/or locate individuals who may have moved.  Luminant does not specifically respond to this request, and the court now grants it in part and denies it in part.

As plaintiffs note, discovery of this sort of information is a routine component of court-facilitated notice in FLSA collective actions. *See, e.g., Hoffmann-LaRoche*, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."); *Bonner v. SFO Shuttle Bus Co.*, 2013 WL 6139758, at *5 (N.D.

---

[12]In their reply, plaintiffs request that plaintiffs' counsel's firm name and contact information be updated with the forms.  The court grants this request.

Cal. Nov. 21, 2013) (granting plaintiffs' motion for conditional certification and ordering defendant to produce Microsoft Excel file containing names, mailing addresses, email addresses, and phone numbers of all prospective members of class). Because doing so will improve the accuracy of the notice, and, as a result, minimize undue delay, the court grants plaintiffs' request as to the names and last known addresses but denies it as to the telephone numbers. Consistent with its prior practice, the court concludes that the need for compelled disclosure of prospective class members' telephone numbers is outweighed by their privacy interests, and that there is no apparent reason to conclude that sending a letter to a person's last known address will be inadequate. *See Aguilar*, 2004 WL 2293842, at *5. Accordingly, the court directs that, within 30 days of the date this memorandum opinion and order is filed, Luminant provide plaintiffs' counsel either a Microsoft Word or Microsoft Excel data file containing the names and last known addresses of current and former non-management mining employees (except electricians and mechanics) at the Three Oaks Mine who were employed between March 1, 2012 and March 15, 2013.

*   *   *

For the reasons explained, plaintiffs' October 15, 2013 motion for conditional certification and to facilitate § 216(b) notice is granted, Luminant's objections to the proposed notice and consent form are sustained in part and overruled in part, and limited discovery is granted in part and denied in part.

**SO ORDERED.**

February 14, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE